IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**ASHLEY KNAPP, on behalf of herself**　　　)
**and all others similarly situated,**　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　**PLAINTIFF,**　　　　　　　)
**v.**　　　　　　　　　　　　　　　　　　　)　　**Case No.:**　3:20cv191
　　　　　　　　　　　　　　　　　　　　　)
**ZOETIS INC,**　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　**DEFENDANT.**　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)

## CLASS ACTION COMPLAINT

COMES NOW, Plaintiff Ashley Knapp (herein "Knapp" or "Plaintiff"), on behalf of herself and all others similarly situated, (collectively, "Plaintiffs") and makes the following allegations against Defendant Zoetis Inc. (herein "Zoetis"):

### INTRODUCTION AND PARTIES

1.　　Knapp brings this lawsuit, on behalf and herself and all other similarly situated, seeking recovery against Zoetis relating to its equine medical product Excede, for negligence, breach of express warranty, breach of implied warranty, and failure to warn.

2.　　Knapp is a citizen and resident of the City of Richmond in the Commonwealth of Virginia.

3.　　Zoetis is the largest global animal health company. It is incorporated in the State of Delaware and its principal place of business and global headquarters located at 10 Sylvan Way in Parsippany, New Jersey.  Zoetis is authorized to transact business in the Commonwealth of Virginia pursuant to a certificate of authority issued by the Virginia State Corporation Commission. Zoetis, with Virginia corporate ID F194381, maintains a

registered agent in Glen Allen, Virginia, regularly transacts business in the Commonwealth of Virginia, and has subjected itself to the jurisdiction of Virginia courts. On information and belief, Zoetis is additionally authorized to, and does, operate throughout the United States.

4.     Zoetis manufactures and distributes an injectable, extended release antibiotic for equines with the brand name Excede.

5.     Plaintiffs are all owners of horses in the United States who suffered adverse reactions to Excede within the last ten (10) years.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of more than 100 members and the amount in controversy exceeds $5,000,000, exclusive of costs and interests and minimal diversity exists.

7.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District. Plaintiff resides in this District and, as shown above and below, Zoetis transacts business in this District and her horse was administered Excede within this District.

## FACTUAL ALLEGATIONS

8.     Knapp owns a seven-year old Hanoverian gelding horse known as Boomer. Boomer was at all relevant times stabled at a boarding facility known as Linmoorland Farm located in Gloucester, Virginia.

9.     On or about the morning of August 13, 2016, Boomer was brought into the barn by the stable staff at Linmoorland after overnight turnout.

10.     The staff noticed that all four of Boomer's legs were swollen; however, no cuts, abrasions, or scratches were noticed.  Boomer was eating, drinking, defecating, and urinating normally.

11.     An equine veterinarian was called immediately to examine, diagnose, and treat Boomer.

12.     As a part of the treatment, the veterinarian administered an injection of Excede to Boomer.

13.     Within an hour, Boomer began to show signs of extreme pain, including abnormal vocalization (screaming whinny), abnormal sweating, spinning in his stall, striking out, buckling of the hind end and inability to walk normally, stretching and turning his neck repeatedly, and biting at the air with his teeth bared.

14.     The veterinarian was called back to the barn immediately.

15.     When she returned, Boomer was becoming increasingly lethargic and was unable to raise his head normally.  The veterinarian observed that Boomer's gums had turned white, and a toxic line had appeared.  She also observed that no gut sounds were present and that his respiratory rate had increased.

16.     The veterinarian referred Boomer to Blue Ridge Equine in Charlottesville, Virginia for emergency treatment, and he was shipped immediately to Blue Ridge.

17.     The treating veterinarian at Blue Ridge diagnosed Boomer with a reaction to the Excede injection, and he ruled out colic as a source of Boomer's symptoms.

18.     Boomer was treated for his symptoms at Blue Ridge for two days, and during the course of that treatment, an ultrasound detected a pocket of fluid on the neck at the injection site.

19.     After being shipped home on August 15, 2016, Boomer was observed standing abnormally with his hind legs underneath him, which is an indication of pain and discomfort.  Boomer also exhibited signs of neck soreness. Over the ensuing days, a large of patch of swelling and leathery skin spread over most of the left side of Boomer's neck. The swelling began to harden, and firm lumps were felt under the skin.

20.     On August 18, 2016, Ms. Knapp notified Zoetis of Boomer's severe reaction to the Excede injection.

21.     Dr. Maureen Dower of Zoetis disclosed that a similar reaction had occurred on or about October 29, 2014 to a horse located in Vermont.

22.     In addition, numerous other similar reactions, including ones with fatal outcomes, have occurred throughout the country and have been reported to Zoetis since at least 2012 and continued through 2019, including several recent severe or fatal reactions in the Charlottesville and Middleburg areas of Virginia.

23.     Despite the knowledge of these severely debilitating and/or fatal reactions, Zoetis has not disclosed or adequately warned of Excede's danger to horses.

24.     Since Boomer's treatment for the Excede reaction in 2016, he has experienced persistent lameness, and the musculature in his neck has been permanently damaged.

25.     Consistent veterinary treatment, with a variety of modalities, has been unable to return Boomer to soundness necessary for a performance horse.

26.     Prior to the Excede injection and reaction, Boomer was a successful, young show hunter.

27.    As a result of the permanent lameness and physical damage caused by the Excede injection, Boomer can no longer be ridden or used as a show horse.

### REPRESENTATIVE FACTS FOR CLASS ACTION CLAIMS

28.    From 2010 through December 2018, nearly 600 adverse reaction reports were made by Zoetis to the FDA for Excede reactions experienced by horses in the United States.  Upon information and belief, additional significant adverse reactions occurred during 2019.

29.    Reactions have included fatal reactions, internal hemorrhaging, anaphylaxis, other systemic-type reactions, and site reactions ranging from debilitating to minor with complications that have included, but are not limited to swelling, muscle damage, pain, and scarring at the injection site. Ms. Knapp's horse, Boomer, experienced both a severe anaphylactic response and a severe site reaction.

29.    In many of these instances, whether the end result was a fatality or not, the affected horses were provided with extensive and expensive veterinary care and the owners of the animals have had to absorb those costs as well as the diminished value associated with those horses who have not, and will not, fully recover. In the case of Boomer, veterinary bills totaled approximately $6,500.00.

30.    On information and belief, the veterinary bills for each of the majority of the approximately 600 afflicted horses would have been well into the thousands, and in some of the more extreme cases, in excess of $10,000.00.

31.    Zoetis was made aware of these adverse reactions, and the resulting veterinary costs and diminished value of the afflicted horses.

32.     Upon information and belief, many of the horses who have suffered adverse reactions to Excede are, like Ms. Knapp's horse, performance animals. As such, their fair market value is driven by their ability to participate in equestrian sport. In addition, the fair market value of horses that compete within certain disciplines is also driven by the horse's physical appearance and lack of blemishes or scarring. The fair market value of performance horses can range from thousands to hundreds of thousands to millions. Ms. Knapp's horse, Boomer, had a pre-injury fair market value of $90,000.00.

33.     The fair market value of a horse that experiences a significant medical issue or complication, like a severe drug reaction, muscle damage, or scarring, is significantly diminished. In certain instances, the residual value of a damaged performance horse is essentially zero.

32.     Despite knowledge of the numerous adverse reactions suffered by horses who were administered Excede, Zoetis has refused to revise Excede's warning label and prescribing information to reflect the significant negative post-approval experience. Consequently, the majority of would be consumers and prescribing veterinarians are left with no way of knowing of the considerable risk associated with the administration of Excede.

34.     Excede is an antibiotic expressly marketed as treating equine respiratory infections with a "two dose, one solution" treatment for sick horses. Zoetis further markets Excede as doing in two doses what would otherwise take ten.[1] Excede is also prescribed by veterinarians for off-label uses as well.

---

[1] *See* https://www.zoetisus.com/products/horses/excede.aspx (last visited 11.18.19)

35.    Excede works through an "extended release formulation" which upon winning FDA approval in 2010, Zoetis touted as a "true innovation."  Because of Excede's extended release formulation, Zoetis claimed it made treatment of horses easier and more effective because it would allow owners and veterinarians to administer treatment more easily and with less stress to the animal.[2]

36.    Excede, and other extended release veterinary medications, are of particular use when it comes to free roaming animals, like livestock who are not stabled and thus may be difficult to locate at any given time.

37.     For multiple categories of horses, be they performance horses like Boomer, racehorses, and/or other riding horses, location is rarely an issue because they are usually stabled, or have ready access to stabling, and can be provided medication more simply and consistently than roaming livestock.  For such horses, administration of a ten-day course of non-extended release antibiotics remains a relatively easy task that has been accomplished in the horse industry for many decades.

38.    Nevertheless, despite a viable alternative and the known concerns regarding the negative post-approval experiences suffered by hundreds of horses, Zoetis has refused to make any alterations to Excede's label and continues to market the product as being superior to traditional courses of antibiotic treatment for stabled horses.

### RULE 23 CLASS ACTION ALLEGATIONS

**A.    Class Definition**

39.    Plaintiff, the Rule 23 Class Representative, seeks to maintain claims pursuant to N.J. Stat. § 2A:58C-2 through N.J. Stat. § 2A:58C-5 , individually, on her own

---

[2] *See* https://www.zoetisus.com/news-and-media/fda-approves-pfizer-animal-healths-excede-ceftiofur-crystalline-free-acid-sterile-suspension-for-horses.aspx (last visited 11.18.19)

behalf, and on behalf of a class of horse owners who, during any time within the liability period of 2010 to present: 1) owned horses that suffered adverse complications caused by the administration of Excede; and/or 2) were charged for the veterinary and other treatment of horses affected by Excede; and/or 3) owned horses whose fair market value was diminished or eliminated as a result of the negative effects of the administration of Excede.

**B.      Efficiency of Class Prosecution of Common Claims**

40.      Certification of a class of affected horse owners, all proceeding under Zoetis's home state law of New Jersey Law is the most efficient and economical means of resolving the questions of law and fact which are common to the claims of the Class Representatives and the proposed class. Conversely, proceeding on an individual basis will require the filing of potentially hundreds of duplicative individual suits, under myriad state laws, which will waste judicial time and resources and create the risk of inconsistent or varying adjudications of common issues.

**C.      Numerosity and Impracticality of Joinder**

41.      The class which the Class Representative seeks to represent is so numerous that joinder is impracticable. On information and belief, the putative class during the liability period is nearly six hundred (600) separate horse owners whose animals have been harmed and who have had to absorb the not insubstantial cost of attendant veterinary and follow-up care for said horses.

**D.      Common Questions of Law and Fact**

42.      This action involves common questions law and fact which predominate over any questions affecting individual Class member including, without limitation:

a)      Whether Defendant was put on notice of adverse complications likely caused by the administration of Excede to horses,

b)      If prior to receiving such notice, Defendant was already aware of such issues,

c)      Whether Defendant took any steps to alter or amend its warning labeling or treatment indications either pre- or post-notice,

d)      Whether Defendant actively sought to avoid having to alter or amend its warning label;

d)      Has Excede's warning label and treatment indication ever been sufficient to warn veterinarians and horse owners of the potential for serious complications.

e)      Whether punitive damages are available against the Defendant and whether they should be awarded in any event.

e)      Whether Defendant breached express and implied warranties in the sale of Excede.

43.      These and other common issues of fact inform and will determine whether the Defendant is liable or exempt under New Jersey law governing product liability and will also determine the availability of punitive damages to the Class.

**E.      Typicality of Claims and Relief Sought**

44.      The claims of the Class Representative are typical to those of the class members as a whole in that her claims are based the complications Boomer experienced and damages she suffered due to administration of Excede precisely as indicated and that hundreds of other horses have suffered from similar side effects and required similar treatment.

Notably, exactly because Excede only requires two doses, rather than ten, over a treatment course, it is much more likely that Plaintiffs adhered to recommended schedule for administration.

### Adequacy of Representation

45.     Plaintiff is an adequate class representative. Her interests are co-extensive with those of the members of the proposed class she seeks to represent. Plaintiff has knowledge of Defendant's past and present efforts to market Excede and of Defendant's heretofore resistance to changing Excede's warning label. She is committed to being a representative of the class, and has retained counsel experienced in prosecuting both equine cases and class actions.

### G.      Rule 23(B)(3) Requirements

46.     Common questions of law and fact predominate over any questions affecting only individual members because the basis of the claims herein is the common application of New Jersey Law and common relevant acts and/or omissions by Defendant.

47.     A class action is superior to other available methods for adjudicating the controversy because other methods would involve the filing of hundreds of individual claims that are based on the same acts and omissions by the same Defendant. Hundreds of like individual cases spread out across the country, applying the law of myriad states, would waste the parties' resources and waste judicial time and resources. Moreover, multiple individual cases based on the same legal issue could lead to inconsistent or varying adjudications.

48.     The putative class members do not have a substantial interest in individually controlling a separate action because any such claim would be based on the same central facts.

49.     The Class Representative and counsel are not aware of any other litigation concerning the controversy that has already begun by proposed class members.

50.     It is desirable to concentrate the claims in this forum because the harm suffered by the Class Representative complained of herein occurred exclusively in this forum.

51.     The Class Representative and counsel do not foresee any substantial difficulties in managing a class action and counsel is experienced in managing class action litigation in this, and other, forums.

## COUNT I
### Negligence

52.     The foregoing allegations are hereby incorporated by reference as if fully set forth herein.

53.     At all relevant times herein, Zoetis was engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, the injectable animal antibiotic with brand name Excede, including the Excede that was used on Boomer and other horses across the country.

54.     Zoetis had a duty to exercise reasonable care in the design, manufacture, sale, and/or distribution of Excede into the stream of commerce, including a duty to assure that its products, specifically Excede, did not pose a significantly increased risk of harm and adverse events to the animals on which its products were used.

55. Zoetis failed to exercise ordinary care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, promotions and distribution of Excede into interstate commerce in that Zoetis knew or should have known that Excede could cause severely debilitating and/or fatal reactions in horses.

56. Despite the fact that Zoetis knew or should have known that Excede poses a serious risk of harm to horses, Zoetis continues to manufacture and market Excede for use by consumers and end-users including Knapp and those similarly situated. Alternative effective antibiotics that do not pose the same risk of harm to horses exist and are available to consumers and end-users including Knapp and those similarly situated.

57. The Excede antibiotic was unreasonably dangerous for the use in horses to which it would ordinarily be put and for its foreseeable purposes, and the unreasonably dangerous condition existed when the Excede antibiotic left Zoetis' hands.

58. The Excede antibiotic extended release formulation was unreasonably dangerous because it was defective in manufacture, imprudently designed, and/or not accompanied by adequate warnings about its hazardous properties.

59. As a direct result of Zoetis' negligence, Knapp, and others similarly situated, have sustained damages to their horses in that they have diminished no longer has monetary value as performance horses, as breeding horses, and/or as recreational riding horses; have sustained substantial veterinary expenses for the treatment of their horses to save and/or attempt to save their lives; have sustained veterinary expenses to try to reverse or mitigate the debilitating effects of the reactions, and to try to return the horses to their prior sound condition; and will sustain in the future expenses associated with the care and

maintenance of the horses for the remainder of their lives without being able to use the horses for their intended purpose.

## COUNT II
## Failure to Warn
## (New Jersey Product Liability Act)

60.     The foregoing allegations are hereby incorporated by reference as if fully set forth herein.

61.     Defendant manufactures, markets, sells and distributes Excede.

62.     At all times relevant, Defendant was well aware of the dangers posed by Excede.

63.     At all times relevant, Plaintiffs and their veterinarians were not aware of the dangers and risks associated with the administration of Excede to stabled horses.

64.     Defendant's warning label and treatment indication(s) for Excede make no mention of such aforementioned dangers and risks.

65.     As a direct result of Zoetis' failure to provide an informative, accurate, and adequate warning label, Knapp, and those similarly situated, have sustained damage to their horses in that they have significantly diminished monetary value; have sustained veterinary expenses for the treatment of their horses to save their lives; have sustained veterinary expenses to try to reverse or mitigate the debilitating effects of the reaction(s), and to try to return the horses to their prior sound condition, which efforts have been unsuccessful; and will sustain in the future expenses associated with the care and maintenance of the horses for the remainder of their lives without being able to use the horses for their intended purpose.

## Count III
## Defective Design and Manufacture
## (New Jersey Product Liability Act)

66.    The foregoing allegations are hereby incorporated by reference as if fully set forth herein.

67.    At all relevant times herein, Zoetis was engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, the injectable animal antibiotic with brand name Excede, including the Excede that was used on Boomer and other horses across the country.

68.    The Excede antibiotic was unreasonably dangerous for the use in horses to which it would ordinarily be put and for its foreseeable purposes, and the unreasonably dangerous condition existed when the Excede antibiotic left Zoetis' hands.

69.    The Excede antibiotic extended release formulation was unreasonably dangerous because it was defective in manufacture, imprudently designed, and/or not accompanied by adequate warnings about its hazardous properties.

70.    Despite the fact that Zoetis knew or should have known that Excede poses a serious risk of harm to horses, Zoetis continues to manufacture and market Excede for use by consumers and end-users including Knapp and those similarly situated. Alternative effective antibiotics that do not pose the same risk of harm to horses exist and are available to consumers and end-users including Knapp and those similarly situated.

71.    As a direct result of Zoetis' defective design and manufacture of the antibiotic Excede , Knapp, and those similarly situated, have sustained damage to their horses in that they have significantly diminished monetary value; have sustained veterinary

expenses for the treatment of their horses to save their lives; have sustained veterinary expenses to try to reverse or mitigate the debilitating effects of the reaction(s), and to try to return the horses to their prior sound condition, which efforts have been unsuccessful; and will sustain in the future expenses associated with the care and maintenance of the horses for the remainder of their lives without being able to use the horses for their intended purpose.

### COUNT IV
### Breach of Express Warranty
### (New Jersey Commercial Code)

72.    The foregoing allegations are hereby incorporated by reference as if fully set forth herein.

73.    Zoetis expressly warranted that the Excede antibiotic was safe and reasonably fit for its intended use in the treatment of horses through its information containing affirmations of statements of facts, promises, and descriptions regarding the product. Such affirmations, promises, and descriptions include, but are not limited, to:

    a.    "Excede provides peace of mind knowing that the antibiotic has been demonstrated to be safe and effective in horses."

    b.    "In a safety study, swelling [at the injection site] completely resolved within 7 days in the majority of cases."

    c.    "Excede makes the treatment process less stressful for you and your horse."

    d.    "Excede may cause some transient swelling and edema around injection site."

e.    "No cases of necrosis, abscess or drainage were reported in the clinical studies."

74.    Knapp and others similarly situated chose the Excede antibiotic based upon Zoetis' express warranties and representations regarding the safety and fitness of Excede.

75.    The Excede antibiotic manufactured and sold by Zoetis did not conform to Zoetis' express representations because an injection of Excede caused serious harm, stress, and permanent damage to Knapp's horse when used as recommended and directed.

76.    As a direct result of Zoetis' breach of warranty, Knapp, and those similarly situated, have sustained damage to their horses in that they have significantly diminished monetary value; have sustained veterinary expenses for the treatment of their horses to save their lives; have sustained veterinary expenses to try to reverse or mitigate the debilitating effects of the reaction(s), and to try to return the horses to their prior sound condition, which efforts have been unsuccessful; and will sustain in the future expenses associated with the care and maintenance of the horses for the remainder of their lives without being able to use the horses for their intended purpose.

**COUNT V**
**Breach of Implied Warranty**
**(New Jersey Commercial Code)**

77.    The foregoing allegations are hereby incorporated by reference as if fully set forth herein.

78.    At the time Zoetis designed, manufactured, marketed, sold, and distributed the Excede antibiotic for use by Knapp, and those similarly situated, Zoetis knew of the use for which Excede was intended and impliedly warranted that it was of merchantable quality and safe for such use and reasonably safe.

79.    The Excede antibiotic was, in fact, unfit and unmerchantable and unreasonably dangerous for its foreseeable and intended uses and was defective in manufacture, imprudently designed, not accompanied by adequate warnings concerning its hazardous properties, and not in compliance with requirements pertaining and relating to the creation of implied warranties of merchantability.

80.    The unreasonably dangerous condition of the Excede antibiotic as alleged herein existed when it left Zoetis' hands.

81.    As a direct result of Zoetis' breach of warranty, Knapp, and those similarly situated, have sustained damage to their horses in that they have significantly diminished monetary value; have sustained veterinary expenses for the treatment of their horses to save their lives; have sustained veterinary expenses to try to reverse or mitigate the debilitating effects of the reaction(s), and to try to return the horses to their prior sound condition, which efforts have been unsuccessful; and will sustain in the future expenses associated with the care and maintenance of the horses for the remainder of their lives without being able to use the horses for their intended purpose.

**COUNT VI**
**Breach of Express Warranty**
**(Virginia Commercial Code)**
**(On Behalf of Knapp Only)**

82.    The foregoing allegations are hereby incorporated by reference as if fully set forth herein.

83.    Zoetis expressly warranted that the Excede antibiotic was safe and reasonably fit for its intended use in the treatment of horses through its information containing affirmations of statements of facts, promises, and descriptions regarding the product. Such affirmations, promises, and descriptions include, but are not limited, to:

a.  "Excede provides peace of mind knowing that the antibiotic has been demonstrated to be safe and effective in horses."

b.  "In a safety study, swelling [at the injection site] completely resolved within 7 days in the majority of cases."

c.  "Excede makes the treatment process less stressful for you and your horse."

d.  "Excede may cause some transient swelling and edema around injection site."

e.  "No cases of necrosis, abscess or drainage were reported in the clinical studies."

84.  Knapp and/or her veterinarian chose the Excede antibiotic based upon Zoetis' express warranties and representations regarding the safety and fitness of Excede.

85.  The Excede antibiotic manufactured and sold by Zoetis did not conform to Zoetis' express representations because an injection of Excede caused serious harm, stress, and permanent damage to Knapp's horse when used as recommended and directed.

86.  As a direct result of Zoetis' breach of warranty, Knapp has sustained damage to her horse in that it no longer has significant monetary value as a show horse; has sustained veterinary expenses for the treatment of her horse to save its life; has sustained veterinary expenses to try to reverse or mitigate the debilitating effects of the reaction, and to try to return the horse to its prior sound condition, which efforts have been unsuccessful; and will sustain in the future expenses associated with the care and maintenance of the horse for the remainder of its life without being able to use the horse for its intended purpose.

## COUNT VII
## Breach of Implied Warranty
## (Virginia Commercial Code)
## (On Behalf of Knapp Only)

87.     The foregoing allegations are hereby incorporated by reference as if fully set forth herein.

88.     At the time Zoetis designed, manufactured, marketed, sold, and distributed the Excede antibiotic for use by Knapp, Zoetis knew of the use for which Excede was intended and impliedly warranted that it was of merchantable quality and safe for such use and reasonably safe.

89.     The Excede antibiotic was, in fact, unfit and unmerchantable and unreasonably dangerous for its foreseeable and intended uses and was defective in manufacture, imprudently designed, not accompanied by adequate warnings concerning its hazardous properties, and not in compliance with requirements pertaining and relating to the creation of implied warranties of merchantability.

90.     The unreasonably dangerous condition of the Excede antibiotic as alleged herein existed when it left Zoetis' hands.

91.     Knapp is not required to give notice to Zoetis of her breach of warranty claims under Va. Code §8.2-607(3)(a). Nevertheless, on or about January 16, 2018, prior to the institution of this action and in addition to the notice given on or about August 18, 2016, Knapp gave written notice to Zoetis regarding Boomer's reaction as well as the danger and unfitness of Excede.  Zoetis did not respond to the January 16, 2018 correspondence.

92.     As a direct result of Zoetis' breach of warranty, Knapp has sustained damage to her horse in that it no longer has significant monetary value as a show horse;

has sustained veterinary expenses for the treatment of her horse to save its life; has sustained veterinary expenses to try to reverse or mitigate the debilitating effects of the reaction, and to try to return the horse to its prior sound condition, which efforts have been unsuccessful; and will sustain in the future expenses associated with the care and maintenance of the horse for the remainder of its life without being able to use the horse for its intended purpose.

WHEREFORE, Knapp, on behalf of herself and all others similarly situated, respectfully requests that, as to Counts I-V, she be awarded judgment against Zoetis as follows:

      a.     damages in the amount of no less than 6,500,000.00,

      b.     Punitive damages in an amount to be determined at trial; and

      c.     all other relief that this Court deems just and proper.

And as to Counts VI and VII, that she be awarded, individually, judgment against Zoetis as follows to the extent such recovery is not duplicative of any class recovery:

      a.  damages in the amount of no less than $150,000.00;

      b.  all other relief this Court deems just and proper.

Jury trial demanded.

 

 

ASHLEY KNAPP, individually, on behalf of herself and all others similarly situated

/s/ Tamara L. Tucker
By Counsel

Tamara L. Tucker (VSB No. 39805)
Tucker Law Firm, PLC
690 Berkmar Circle
Charlottesville, VA  22901
833-388-2537 phone & fax
tamara.tucker@tuckerlawplc.com

Harris D. Butler, III, (VSB No. 26483)
Zev H. Antell (VSB No. 74634)
Butler Royals, PLC
140 Virginia Street, Ste 302
Richmond, Virginia 23219
Telephone: (804) 648-4848
Facsimile: (804) 237-0413
Email: harris.butler@butlerroyals.com
          zev.antell@butlerroyals.com

Counsel for Plaintiff