**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

**ASHLEY KNAPP,** *on behalf of herself*
*and all others similarly situated*,

          **Plaintiff,**

**v.**                                   **Civil Action No. 3:20cv191**

**ZOETIS INC.,**

          **Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on two motions:

(1)    Defendant Zoetis Inc's ("Zoetis") Motion to Dismiss pursuant to Federal
Rule of Civil Procedure 12(b)(6)[1] ("Motion to Dismiss"), (ECF No. 4); and,

(2)    Zoetis's Motion to Strike Class Allegations (the "Motion to Strike"), (ECF
No. 6);

Plaintiff Ashley Knapp responded in opposition to the Motion to Dismiss and the Motion

to Strike, (ECF Nos. 15, 16), and Zoetis replied, (ECF Nos. 18, 19).

The matter is ripe for disposition. The Court dispenses with oral argument because the

materials before it adequately present the facts and legal contentions, and argument would not

aid in the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C. §§ 1332(a)

and (d).[2] For the reasons that follow, the Court will grant in part and deny in part the Motion to

Dismiss and grant the Motion to Strike.

---

[1] Rule 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be
granted." Fed. R. Civ. P. 12(b)(6).

[2] "The district courts shall have original jurisdiction of any civil action in which the
matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs,
and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State

## I.  Factual[3] and Procedural Background

This seven-count product liability action arises from a veterinarian's use of Excede, a Zoetis-developed equine antibiotic, on Knapp's horse Boomer.  Knapp alleges that after the veterinarian administered Excede to Boomer, the horse developed serious medical complications leading to "persistent lameness" and permanent damage to the "musculature in his neck." (Compl. ¶ 24.)  Knapp alleges that Zoetis had knowledge of similar negative reactions to Excede between 2012 and 2019, but "has not disclosed or adequately warned of Excede's danger to horses."  (*Id*. ¶¶ 22–23.)

---

different from any defendant."  28 U.S.C. § 1332(d)(2)(A).  Knapp, a citizen of Virginia, brings this class action against Zoetis, a citizen of Delaware and New Jersey.  (Compl. ¶¶ 2, 3, ECF No. 1.)  The Complaint seeks damages in excess of $6,500,000.00.  (*Id*. 20.)  The Court exercises diversity jurisdiction over Knapp's individual claims arising under Virginia law.  *See* 28 U.S.C. § 1332(a) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States.").

[3] Although Zoetis purports to bring its Motion to Dismiss pursuant to Rule 12(b)(6), Zoetis also challenges Knapp's ability to assert her claims arising under New Jersey law, questioning her standing and this Court's subject matter jurisdiction.  Generally, challenges to standing are addressed under Federal Rule of Civil Procedure 12(b)(1).  *CGM, LLC. v. BellSouth Telecomm., Inc*., 664 F.3d. 46, 52 (4th Cir. 2011).
    Under Rule 12(b)(1), when a defendant asserts that the complaint fails to state a claim upon which subject matter jurisdiction can lie, the Court assumes the truth of the facts alleged by plaintiff.  *See Int'l Longshoremen's Ass'n, S.S. Clerks Local 1624, AFL-CIO v. Virginia Int'l Terminal*, 914 F. Supp. 1335, 1338 (E.D. Va. 1996); *see also Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).  Similarly, for the purpose of the Rule 12(b)(6) Motion to Dismiss, the Court will accept the well-pleaded factual allegations in Knapp's Complaint as true, and draw all reasonable inferences in favor of Knapp.  *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) ("a court 'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff'") (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)).  Therefore, applying the standards of review set forth in 12(b)(1) and 12(b)(6), the Court will assume the truth of the facts alleged by Knapp in the Complaint.

## A.   Factual Background

Zoetis, the world's largest "animal health company," "manufactures and distributes an injectable, extended release antibiotic for equines with the brand name Excede." (Compl. ¶¶ 3–4.) Zoetis markets Excede "as treating equine respiratory infections with a 'two dose, one solution' treatment." (*Id*. ¶ 34.) Veterinarians also prescribe Excede "for off-label uses." (*Id*.)

### 1.   Boomer Experiences an Adverse Reaction to Excede

Knapp owns Boomer, a seven-year-old Hanoverian gelding, who "was at all relevant times stabled at a boarding facility known as Linmoorland Farm located in Gloucester, Virginia." (Compl. ¶ 8.) On August 13, 2016, Boomer began to suffer from leg swelling while at Linmoorland Farm. (*Id*. ¶¶ 9–10.) A veterinarian (the "Linmoorland Veterinarian") was immediately called "to examine, diagnose, and treat Boomer" and "[a]s a part of the treatment . . . administered an injection of Excede to Boomer." (*Id*. ¶¶ 11–12.) Within an hour of treatment with Excede, "Boomer began to show signs of extreme pain, including abnormal vocalization (screaming whinny), abnormal sweating, spinning in his stall, striking out, buckling of the hind end and inability to walk normally, stretching and turning his neck repeatedly, and biting at the air with his teeth bared." (*Id*. ¶ 13.) The Linmoorland Veterinarian returned to the stable and observed that Boomer was becoming "increasingly lethargic and was unable to raise his head normally. . . . [his] gums had turned white, and a toxic line had appeared." (*Id*. ¶ 15.) The Linmoorland Veterinarian referred Boomer to Blue Ridge Equine, a nearby animal hospital, "for emergency treatment." (*Id*. ¶¶ 16–17.) There, the treating veterinarian "diagnosed Boomer with a reaction to the Excede injection, and . . . ruled out colic as a source of Boomer's symptoms." (*Id*.) "Boomer was treated for his symptoms at Blue Ridge for two days, and during

3

the course of that treatment, an ultrasound detected a pocket of fluid on the neck at the injection site." (*Id*. ¶ 18.)

Boomer returned to Linmoorland Farm two days later, on August 15, 2016, and "was observed standing abnormally with his hind legs underneath him, which is an indication of pain and discomfort." (*Id*. ¶ 19.) "Over the ensuing days, a large of patch of swelling and leathery skin spread over most of the left side of Boomer's neck." (*Id*.)

Knapp states that prior to treatment with Excede "Boomer was a successful, young show hunter" but he has since "experienced persistent lameness, and the musculature in his neck has been permanently damaged." (*Id*. ¶¶ 24, 26.) "Consistent veterinary treatment . . . has been unable to return Boomer to soundness necessary for a performance horse." (*Id*. ¶ 25.)

### 2.     Excede Causes Similar Adverse Reactions in Other Horses

On August 18, 2016, Knapp "notified Zoetis of Boomer's severe reaction to the Excede injection." (Compl. ¶ 20.) In response, Dr. Maureen Dower of Zoetis informed Knapp "that a similar reaction had occurred on or about October 29, 2014 to a horse located in Vermont." (*Id*. ¶ 21.) Knapp alleges that "numerous other similar reactions, including ones with fatal outcomes, have occurred throughout the country and have been reported to Zoetis since at least 2012 and continued through 2019, including several recent severe or fatal reactions in the Charlottesville and Middleburg areas of Virginia." (*Id*. ¶ 22.) Knapp asserts that from 2010 through December 2018, "nearly 600 adverse reaction reports were made by Zoetis to the FDA for Excede reactions experienced by horses in the United States." (*Id*. ¶ 28.)

Knapp states that equine reactions to Excede "have included fatal reactions, internal hemorrhaging, anaphylaxis, other systemic-type reactions, and site reactions ranging from debilitating to minor with complications that have included, but are not limited to swelling,

muscle damage, pain, and scarring at the injection site." (*Id.* ¶ 29.1.)[4]  Knapp alleges that, while the severity of the reaction and symptoms varied in each individual case, "[i]n many of these instances . . . the affected horses were provided with extensive and expensive veterinary care and the owners of the animals have had to absorb those costs as well as the diminished value associated with those horses." (*Id.* ¶ 29.2.)  "On information and belief, the veterinary bills for each of the majority of the approximately 600 afflicted horses would have been well into the thousands, and in some of the more extreme cases, in excess of $10,000.00." (*Id.* ¶ 30)

### 3.    Zoetis Becomes Aware of Excede's Harmful Effects

Knapp alleges that "Zoetis was made aware of these adverse reactions, and the resulting veterinary costs and diminished value of the afflicted horses." (Compl. ¶ 31.)  Despite this knowledge, "Zoetis has refused to revise Excede's warning label and prescribing information to reflect the significant negative post-approval experience." (*Id.* ¶ 32.2.)[5]  As a result, the majority of "consumers and prescribing veterinarians are left with no way of knowing of the considerable risk associated with the administration of Excede." (*Id.*)

Knapp alleges that Zoetis also made a number of affirmations about and descriptions of Excede, including that:

a.  Excede provides peace of mind knowing that the antibiotic has been demonstrated to be safe and effective in horses.

b.  In a safety study, swelling [at the injection site] completely resolved within 7 days in the majority of cases.

c.  Excede makes the treatment process less stressful for you and your horse.

---

[4] There are two paragraphs labeled 29 in the Complaint.  The Court modifies the original numbering to reflect which paragraph is first, and which is second.

[5] There are two paragraphs labeled 32 in the Complaint.  The Court again modifies the original numbering to reflect which paragraph is first, and which is second.

      d.  Excede may cause some transient swelling and edema around injection site.

      e.  No cases of necrosis, abscess or drainage were reported in the clinical studies.

(*Id.* ¶ 83 (internal quotations omitted).)  Knapp asserts that Excede "did not conform to Zoetis'[s]

express representations because an injection of Excede caused serious harm, stress, and

permanent damage to Knapp's horse when used as recommended and directed."  (*Id.* ¶ 85.)

### B.    Procedural History

    On March 23, 2020, Knapp filed her twenty-one-page Class Action Complaint in this

Court, bringing seven counts against Zoetis:

**Count I:**     **The Negligence Claim**:[6]  Zoetis "failed to exercise ordinary care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, promotions and distribution of Excede into interstate commerce" and that negligence caused "Knapp, and others similarly situated [to] sustain[] damages to their horses;"

**Count II:**    **The Failure to Warn Claim (New Jersey Law)**:  Zoetis, while "aware of the dangers posed by Excede," failed to "to provide an informative, accurate, and adequate warning label" in violation of the New Jersey Product Liability Act;

**Count III:**   **Defective Design and Manufacture (New Jersey Law)**:  Zoetis created Excede so that it was "unreasonably dangerous for the use in horses to which it would ordinarily be put and for its foreseeable purposes" in violation of the New Jersey Product Liability Act;

**Count IV:**   **Breach of Express Warranty (New Jersey Law)**:  Zoetis "expressly warranted that the Excede antibiotic was safe and reasonably fit for its intended use in the treatment of horses through its information containing affirmations of statements of facts, promises, and descriptions regarding the product" but Excede "did not conform to Zoetis' express representations" in violation of the New Jersey Commercial Code;

**Count V:**    **Breach of Implied Warranty (New Jersey Law)**:  Zoetis "knew of the

---

[6] Knapp does not specifically allege whether her negligence claim arises under New Jersey or Virginia law.  Although it appears she brings her Negligence Claim as a class claim under New Jersey law, reading Knapp's Complaint broadly, the Court will assume she asserts her Negligence Claim in Count I pursuant to both New Jersey and Virginia law.

use for which Excede was intended and impliedly warranted that it was of merchantable quality and safe for such use and reasonably safe" but "was, in fact, unfit and unmerchantable and unreasonably dangerous for its foreseeable and intended uses" in violation of the New Jersey Commercial Code (collectively with Counts II, III, and IV, (the "New Jersey Claims"));

**Count VI:**   **Breach of Express Warranty (Virginia Law)**:  Knapp, on behalf of herself only, asserts that Zoetis "expressly warranted that the Excede antibiotic was safe and reasonably fit for its intended use in the treatment of horses" yet Excede "did not conform to Zoetis' express representations because an injection of Excede caused serious harm, stress, and permanent damage to Knapp's horse when used as recommended and directed;"

**Count VII:**   **Breach of Implied Warranty (Virginia Law)**:  Knapp, on behalf of herself only, asserts that Zoetis "knew of the use for which Excede was intended and impliedly warranted that it was of merchantable quality and safe for such use and reasonably safe" yet Excede "was, in fact, unfit and unmerchantable and unreasonably dangerous for its foreseeable and intended uses."

(Compl. ¶¶ 55, 59, 62, 65, 68, 73, 75, 78–79, 83, 85, 88–89.)  For her class claims in Counts I through V, Knapp seeks $6,500,000.00 and punitive damages.  (*Id*. 20.)  As to her individual claims in Counts VI and VII, Knapp seeks $150,000.00 in damages.  (*Id*.)

In Counts I through V, purportedly brought under New Jersey law, Knapp seeks to maintain a class action on behalf of herself and all others similarly situated.  Knapp seeks to maintain her class claims

pursuant to N.J. Stat. § 2A:58C-2 through N.J. Stat. § 2A:58C-5, individually, on her own behalf, and on behalf of a class of horse owners who, during any time within the liability period of 2010 to present: 1) owned horses that suffered adverse complications caused by the administration of Excede; and/or 2) were charged for the veterinary and other treatment of horses affected by Excede; and/or 3) owned horses whose fair market value was diminished or eliminated as a result of the negative effects of the administration of Excede.

(*Id*. ¶ 39.)  In support of her decision to bring the class claims under New Jersey law, Knapp states that "[c]ertification of a class of affected horse owners, all proceeding under Zoetis's home state law of New Jersey Law is the most efficient and economical means of resolving the

questions of law and fact which are common to the claims of the Class Representatives and the proposed class."  (*Id.* ¶ 40.)

Zoetis filed its Motion to Dismiss, asserting that Knapp lacked the ability to bring any claims under New Jersey law because Virginia law governed her injury and otherwise challenging the sufficiency of her claims.  (ECF No. 4.)  Zoetis also filed the Motion to Strike, contending that Knapp's class allegations were facially deficient.  (ECF No. 6.)  Knapp responded to both the Motion to Dismiss and the Motion to Strike arguing that the Court need not conduct a choice-of-law analysis at this procedural posture and arguing that she had pleaded sufficient facts to support her claims.  (ECF Nos. 15, 16.)  Zoetis replied.  (ECF Nos. 18, 19.)  For the reasons articulated below, the Court will grant in part and deny in part the Motion to Dismiss, and grant the Motion to Strike.

## II.  Standards of Review

### A.      Federal Rule of Civil Procedure 12(b)(1)

Federal district courts are courts of limited subject matter jurisdiction.  *United States ex rel. Vuyvuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009) (citing *Exxon Mobile Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005)).  This Court must, as a result, determine whether it has jurisdiction over the claims at issue.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'") (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)).  "The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation . . ." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006) (citing Fed. R. Civ. P. 12(b)(1)).

In a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenging the Court's subject matter jurisdiction, the burden rests with the plaintiff, as the party asserting jurisdiction, to prove that federal jurisdiction is proper.  *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338 (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams*, 697 F.2d at 1219).  A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) can attack subject matter jurisdiction in two ways.  *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).  First, a Rule 12(b)(1) motion may attack the complaint on its face, asserting that the complaint fails to state a claim upon which subject matter jurisdiction can lie.  *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219.  In such a challenge, a court assumes the truth of the facts alleged by plaintiff.  *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219.

Alternatively, a Rule 12(b)(1) motion may also challenge the existence of subject matter jurisdiction in fact, apart from the pleadings.  *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219.  In such a case, because a party challenges the court's "very power to hear the case," the trial court is free to weigh evidence to determine the existence of jurisdiction.  *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).  No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.  *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219.

Because Zoetis challenges whether Knapp's Complaint states claims upon which subject matter jurisdiction can lie, the Court assumes the truth of the facts alleged by Knapp.

## B.   **Federal Rule of Civil Procedure 12(b)(6)**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint;

importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the

applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952

(4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and

Procedure* § 1356 (1990)).  To survive Rule 12(b)(6) scrutiny, a complaint must contain

sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that

states a claim for relief must contain . . . a short and plain statement of the claim showing that the

pleader is entitled to relief.").  Mere labels and conclusions declaring that the plaintiff is entitled

to relief are not enough. *Twombly*, 550 U.S. at 555.  Thus, "naked assertions of wrongdoing

necessitate some factual enhancement within the complaint to cross the line between possibility

and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193

(4th Cir. 2009) (citations omitted).

A complaint achieves facial plausibility when the facts contained therein support a

reasonable inference that the defendant is liable for the misconduct alleged.  *Twombly*, 550 U.S.

at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This analysis is context specific and

requires "the reviewing court to draw on its judicial experience and common sense." *Francis*,

588 F.3d at 193.  The Court must assume all well pleaded factual allegations to be true and

determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to

an entitlement to relief." *Iqbal*, 556 U.S. at 678–79; *see also Kensington*, 684 F.3d at 467

(finding that the court in deciding a Rule 12(b)(6) motion to dismiss "'must accept as true all of

the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of

10

the plaintiff'" (quoting *Kolon Indus., Inc.*, 637 F.3d at 440)).  This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679

### III.  Analysis

For the reasons articulated below, the Court will grant in part and deny in part the Motion to Dismiss and grant the Motion to Strike.  Knapp lacks standing to bring claims arising under New Jersey law in Counts I through V because Virginia substantive law, not New Jersey law, applies to her injury.  For the same reasons, the Court must strike Knapp's class allegations in Count I as she lacks standing to assert claims arising under New Jersey law on behalf of a putative class when she herself was not harmed under the laws of New Jersey.  As to Knapp's claims arising under Virginia law in Counts I, VI, and VII, the Court determines that Knapp states a claim for breach of express warranty, but not for negligence or breach of implied warranty.

### A.    The Court Must First Determine the Threshold Choice-of-Law Issue

As a threshold matter, the Court must determine the substantive law against which to measure the plausibility of Knapp's claims.  Here, Virginia's choice-of-law rules dictate that Virginia substantive law should apply to Knapp's claims.

### 1.    Legal Standard:  Choice-of-Law in Virginia

As a court of limited subject matter jurisdiction, *Jadhav*, 555 F.3d at 347 (citing *Exxon Mobile Corp.*, 545 U.S. at 552), this court must determine whether it has jurisdiction over the claims at issue, *see Steel Co.*, 523 U.S. at 94–95 ("The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the

United States' and is 'inflexible and without exception.'" (quoting *Swan*, 111 U.S. at 382)).  In federal cases, courts typically address choice-of-law questions as a threshold matter.  *See Fransmart, LLC v. Freshii Dev., LLC*, 768 F. Supp. 2d 851, 858 (E.D. Va. 2011) (explaining in a diversity case that "the choice-of-law question is a threshold issue").[7]

A federal court sitting in diversity must apply the choice-of-law rules of the state in which it sits.  *Elderberry of Weber City, LLC v. Living Ctrs.-Se., Inc*., 794 F.3d 406, 415 n.6 (4th Cir. 2015) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)).  This Court, sitting in Virginia, applies Virginia choice-of-law rules.  In cases involving choice-of-law questions, Virginia adheres to the use of traditional rules applicable to conflicts of laws and rejects the "most significant relationship" analysis adopted by some other states.  *Frye v. Commonwealth*, 345 S.E.2d 267, 272 (Va. 1986) (internal citation omitted) (rejecting the "most significant relationship" analysis adopted by the Restatement (Second) of Conflict of Laws)).  "Under such rules, questions of substantive law are governed by the law of the place of the transaction or the place where the right is acquired (*lex loci*), while questions of procedure and remedy are governed by the law of the place where the action is brought (*lex fori*)."  *Id.*

As to tort claims, as in Counts I through III, Virginia "applies the *lex loci delicti*, the law of the place of the wrong."  *Milton v. IIT Research Inst.*, 138 F.3d 519, 521 (4th Cir. 1998).  "[T]he place of the wrong is the place the last event necessary to make an [actor] liable for an alleged tort takes place."  *Ford Motor Co. v. Nat'l Indem. Co*., 972 F. Supp. 2d 850, 856 (E.D. Va. 2013) (internal citations and quotations omitted).  In other words, "Virginia's choice of law

---

[7] Knapp states without citation that the following choice-of-law analysis is "unnecessary in resolving the Motion to Dismiss."  (Mem. Opp. Mot. Dismiss 4 n.2, ECF No. 15.)  But in a diversity action, "the choice-of-law question is a threshold issue," *Fransmart*, 768 F. Supp. 2d at 858, that must be resolved to assess Knapp's standing and the plausibility of Knapp's state law claims.

rule selects the law of the state . . . wherever the effects of that act are felt." *Milton*, 138 F.3d at 522.  In personal injury cases, the cause of action arises when the plaintiff first becomes ill.  *See Quillen v. Int'l Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir. 1986) (finding that plaintiff's cause of action in a products liability action first arose when she became ill at her home in Virginia even though she purchased product in Tennessee).

As to warranty claims, as in Counts IV through VII, express and implied warranties in the sale of a good fall under Virginia's Uniform Commercial Code ("UCC").[8]  Va. Code §§ 8.2-313–8.2-315.  However, under Virginia law, warranty claims may sound in either contract or tort. *See E.I. Du Pont De Nemours & Co. v. Univ. Moulded Prods. Corp*., 62 S.E.2d 233, 236 (Va. 1950) ("[A] complainant may, . . . where there is a breach of warranty, . . . sue in tort." (internal quotations and citations omitted)); Va. Code §§ 8.2-313–8.2-315 (providing for implied and express warranties that form part of the contract or the "basis of the bargain" between the parties).  For those warranty claims sounding in contract, Virginia follows the traditional rule that "questions of substantive law are governed by the law of the place of the transaction or the place where the right is acquired."  *Frye*, 345 S.E.2d at 272.  The Fourth Circuit has stated that "under Virginia law, the law of the state where the injury occurs supplies the substantive law governing warranty claims."  *Farish v. Courion Indus., Inc*., 754 F.2d 1111, 1118 (4th Cir. 1985).

---

[8] Virginia's UCC provides that unless a transaction "bears a reasonable relation to [Virginia] and also to another state or nation" and the parties "agree that the law of either [Virginia] or such other state or nation shall govern their rights and duties," the "rights and obligations of the parties are determined by the law that would be selected by application of [Virginia's] conflict of laws principles."  Va. Code § 8.1A-301(b)–(c).

   2.    **Because Boomer Became Ill in Virginia and All of Knapp's Rights Were Otherwise Acquired in Virginia, Virginia Law Applies to Knapp's Claims**

Because Virginia choice-of-law rules dictate that the substantive law of the place of the injury apply, this Court will apply Virginia substantive law to Knapp's claims.

Knapp's claims in Counts I through III sound in tort. *See Abbot by Abbot v. Am. Cyanamid Co.*, 844 F.2d 1108, 1115 (4th Cir. 1988) (analyzing negligent design, failure to warn, and defective design claims as torts). Therefore, to determine what substantive law applies, this Court must apply Virginia choice-of-law rules and determine "the place of the wrong" or the place where the "last event necessary to make an [actor] liable for an alleged tort takes place." *Ford Motor Co.,* 972 F. Supp. 2d at 856.

Viewing all facts in the light most favorable to Knapp, the "place of the wrong" lies in Virginia, requiring that Virginia substantive law apply to Counts I through III. *Id.* The "last event necessary" to make Zoetis liable for its negligent or deficient production of Excede took place in Virginia when the Linmoorland Veterinarian administered Excede to Boomer, causing him to become ill. *Id.*; *see also Quillen*, 789 F.2d at 1044 (finding that plaintiff's cause of action in a products liability action first arose when she became ill in Virginia). Boomer fell ill and received all medical treatment in Virginia; thus the "effects" of Zoetis's actions were "felt" in Virginia. *Milton,* 138 F.3d at 522.

Virginia law also governs Knapp's warranty claims in Counts IV through VII.[9] Under Virginia choice-of-law principles, breach of warranty claims may sound in either contract in tort. *See E.I. Du Pont De Nemours & Co.*, 62 S.E.2d at 236; *Abbot by Abbot*, 844 F.2d at 1115

---

[9] The Court notes that, unlike her other claims in which she cites New Jersey law, Knapp explicitly brings Counts VI and VII under Virginia law.

(considering breach of implied warranty of merchantability as a tort); Va. Code §§ 8.2-313–8.2-315.  The Court need not resolve whether Knapp brings her warranty claims under a contract or tort theory of liability because under either theory, Virginia substantive law applies.  Indeed, as the Fourth Circuit has definitively stated, "under Virginia law, the law of the state where the injury occurs supplies the substantive law governing warranty claims."  *Farish,* 754 F.2d at 1118.

Here, for the reasons stated above, Knapp's injury occurred in Virginia.  The "last event necessary" to make Zoetis liable for its production of Excede took place in Virginia when the Linmoorland Veterinarian administered the drug to Boomer.  *Ford Motor Co.,* 972 F. Supp. 2d at 856.  And even drawing all reasonable inferences in her favor, the "place of the transaction" also appears to have taken place in the Commonwealth of Virginia.  (*See* Compl. ¶ 7 ("Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District").)  Other than noting that Zoetis's "global headquarters [is] located at 10 Sylvan Way in Parsippany, New Jersey," the Complaint articulates no specific facts relating to any events, acts, or omissions that occurred in New Jersey.  (*Id.* ¶ 3.)

Viewing all facts in the light most favorable to Knapp and drawing all reasonable inferences in her favor, Virginia law governs the claims in Knapp's Complaint, including those purportedly brought under New Jersey law in Counts I through V.  The Court will therefore apply Virginia law to Knapp's claims.

**B.     Counts I–V:  The Court Will Dismiss the New Jersey Claims Because Knapp Lacks Standing Under New Jersey Law**

Because Virginia substantive law applies to Knapp's alleged injury, the Court must grant the Motion to Dismiss the New Jersey Claims in Counts I through V.  Where Virginia choice-of-

law principles have mandated that Virginia law applies, the Court cannot "disregard the directive of Virginia law which [it is] bound to apply in this diversity action." *Milton,* 138 F.3d at 522. Knapp therefore lacks standing to bring any claims under New Jersey law, and this Court lacks subject matter jurisdiction over her New Jersey Claims.

### 1.     <u>Legal Standard:  Article III Standing</u>

Article III, Section 2, clause 1 of the Constitution limits federal court jurisdiction to "Cases" and "Controversies."  U.S. CONST. art. III, § 2, cl. 1.  As the Supreme Court has explained, an "essential and unchanging part of the case-or-controversy requirement" is that a plaintiff must establish Article III standing to sue.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  In *Spokeo, Inc. v. Robins*, the Supreme Court reiterated that, in order to establish standing, a plaintiff must have:  "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant; and[,] (3) that is likely to be redressed by a favorable judicial decision."  136 S. Ct. 1540, 1547 (2016) (citing *Lujan*, 504 U.S. at 560–61).

As the party invoking federal jurisdiction, Plaintiffs bear the burden of properly alleging standing.  *Lujan*, 504 U.S. at 560; *see also Balzer & Assocs., Inc. v. Union Bank & Trust Co.*, No. 3:09cv273, 2009 WL 1675707, at *2 (E.D. Va. June 15, 2009) ("On a motion to dismiss pursuant to Rule 12(b)(1), the party asserting jurisdiction has the burden of proving subject matter jurisdiction." (citing *Richmond, Fredericksburg & Potomac R.R. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991))).  "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element."  *Spokeo*, 136 S. Ct. at 1547 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

In *Spokeo*, the Supreme Court discussed the manner in which a plaintiff must allege "injury in fact."  *Spokeo*, 136 S. Ct. at 1549.  The Supreme Court confirmed that, to establish an

injury in fact, a plaintiff must demonstrate that he or she suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Id*. at 1548 (quoting *Lujan*, 504 U.S. at 560).  When asserting a claim under state law, a plaintiff must show that the state law affords them a specific "entitlement" or "legally protected interested" before he or she can show standing.  *Friends for Ferrell Parkway v. Stasko*, 282 F.3d 315, 321 (4th Cir. 2002) (quoting *Lujan*, 504 U.S. at 560).

### 2. Knapp Lacks Standing to Bring Any Claims Under New Jersey Law Because She Has Not Suffered an Injury in Fact Under the Laws of That State

Knapp has not asserted any particularized injury in fact arising under the laws of New Jersey.  As a result, this Court lacks jurisdiction and must dismiss her New Jersey Claims.

Knapp has not suffered "an invasion of a legally protected interest" under New Jersey law because her injury arises under the law of Virginia.  *Id*.  Knapp has thus not suffered any "injury in fact" under New Jersey law and lacks standing to bring her New Jersey Claims.  *Id.* at 1549.

District courts within the Fourth Circuit have consistently held that plaintiffs do not have standing to bring claims under the statutes or laws of a state where they:  (1) do not reside; and, (2) have not been harmed.  *Porter v. DePuy Orthopaedics, Inc*., No. 3:19cv007, 2019 WL 3979656, at *4–5 (E.D. Va. Aug. 6, 2019), *report & recommendation adopted by*, 2019 WL 3978407 (E.D. Va. Aug. 22, 2019) (dismissing two counts that "improperly allege[d] strict liability under Ohio law when none of Plaintiff's allegations render[ed] Ohio law applicable" and only Virginia law applied); *Manigault-Johnson v. Google*, *LLC*, No. 2:18cv1032, 2019 WL 3006646, at *3 (D.S.C. Mar. 31, 2019) (dismissing privacy claims brought under California law by South Carolina plaintiffs because out of state plaintiffs "cannot maintain [a] cause of action

under the California constitution"); *Zaycer v. Sturm Foods, Inc.*, 896 F. Supp. 2d 399, 408, 409–10 (D. Md. 2012) (dismissing consumer protection claims brought pursuant to law of five states where the only injury occurred in Maryland).

Similarly, federal district courts outside the Fourth Circuit have found that a plaintiff lacks standing where their claims bear little or no causal relation to the law of the state he or she seeks to invoke. *See In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 657 (E.D. Mich. 2011) (collecting thirteen cases for the proposition that "plaintiffs lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury"); *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1325 (S.D. Fla. 2010) (dismissing "state statutory claims where no named plaintiff resides in the state from which the claim is asserted"); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 152 (E.D. Pa. 2009) ("a plaintiff whose injuries have no causal relation to Pennsylvania, or for whom the laws of Pennsylvania cannot provide redress, has no standing to assert a claim under Pennsylvania law, although it may have standing under the law of another state.")

Knapp, however, cites *Irby v. Novartis Pharmaceuticals Corporation*, a New Jersey Superior Court case, for the proposition that New Jersey law could apply to this action.  (Mem. Resp. Mot. Strike 3, ECF No. 16) (citing No. 278, 2011 WL 5835414, at *1 (N.J. Super. Nov. 18, 2011).)  In that case, the parties agreed that when a plaintiff was injured in Virginia, "Virginia law govern[ed] Plaintiff's claims for failure to warn, defective design, breach of implied warranty, negligence, and consumer fraud" but disagreed as to whether New Jersey or Virginia law applied to punitive damages.  *Irby*, 2011 WL 5835414, at *1.  The *Irby* Court, applying New Jersey choice-of-law rules, found that because the defendant company was headquartered in New Jersey, that state possessed a more significant relationship with the

18

conduct at issue as to punitive damages and determined that New Jersey law should govern the extent of punitive relief.  *Id.* at *3.

Irby* does not support Knapp's position.  First, the *Irby* Court applied substantially different New Jersey choice-of-law rules, including the "significant relationship" test that Virginia rejects.  *Id.*  Second, the *Irby* Court explicitly recognized that Virginia law should govern the substance of plaintiff's claims and spoke only to the separate issue of punitive damages.  *Id.*  The *Irby* Court therefore did not hold that a plaintiff could bring claims under New Jersey law where the plaintiff's injuries arose under the law of Virginia.

Because Virginia law applies to this action, Knapp lacks standing to bring any claims pursuant to New Jersey law and this Court lacks subject matter jurisdiction over those same claims.  The Court will grant the Motion to Dismiss Counts II through V without prejudice pursuant to Rule 12(b)(1).  The Court dismisses Count I pursuant to Rule 12(b)(1) only insofar as it asserts a claim under New Jersey law.  The Court will consider Knapp's claim for Negligence under Virginia law below.

### 3.     The Court Must Grant the Motion to Strike Because Knapp Lacks Standing to Assert Claims Under New Jersey Law for the Purported Class Action

For the same reasons that Knapp's individual claims brought under New Jersey law falter, the Court finds her class action claims facially deficient.  As a result, the Court will grant the Motion to Strike.

### a.  Legal Standard:  Motion to Strike Class Allegations on Standing Grounds

A "court may strike from a pleading" class allegations "on motion made by a party" or "require that the pleadings be amended to eliminate" the class allegations.[10]  Fed. R. Civ. P. 12(f)(2) and 23(d)(1)(D).  Class allegations can be abandoned either before or after a plaintiff moves for class certification and conducts discovery.  *See Hooker v. Sirius XM Radio, Inc*., 4:13cv3, 2014 WL 12597593, at *4 (E.D. Va. June 5, 2014) (citing *Scott v. Family Dollar Stores, Inc*., 733 F.3d 105, 109–10, 116 (4th Cir. 2013)).  Nonetheless, a district court "should only grant a motion to strike class allegations before discovery if the allegations are facially and inherently deficient." *Bryant v. King's Creek Plantation, LLC*, No. 4:20cv61, 2020 WL 6876292, at *2 (E.D. Va. June 22, 2020) (internal citation omitted).  A court may deny a motion to strike as premature if the motion requires discovery to address the appropriateness of class certification.  *Id*.

---

[10] There are four prerequisites to class actions under the Federal Rules of Civil Procedure:

> (1) the class is so numerous that joinder of all members is impracticable [numerosity];
>
> (2) there are questions of law or fact common to the class [commonality];
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality];
>
> (4) the representative parties will fairly and adequately protect the interests of the class [adequacy].

Fed. R. Civ. P. 23(a).  In addition to meeting all four prerequisites, the class action must also fit into one of the three categories listed in Rule 23(b).  *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 655 (4th Cir. 2019).  Rule 23(b) requires "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed. R. Civ. P. Rule 23(b)(3).

Like any other action, Article III, Section 2, clause 1 of the Constitution limits federal court jurisdiction over class actions to "Cases" and "Controversies."  U.S. CONST. art. III, § 2, cl. 1.  In a class action, courts analyze standing "based on the allegations of personal injury made by the named plaintiffs."  *Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017) (citing *Doe v. Obama*, 631 F.3d 157, 160 (4th Cir. 2011)).  "Without a sufficient allegation of harm to the named plaintiff in particular, plaintiffs cannot meet their burden of establishing standing."  *Id.* at 270 (quoting *Doe*, 631 F.3d at 160).  Therefore, before determining whether a proposed class meets the elements of Rule 23(a), a court should first consider whether a named plaintiff may "assert the rights of others."  *Carter v. W. Publ'g Co.*, 225 F.3d 1258, 1262 (11th Cir. 2000) (internal citations omitted).

The named plaintiff "must allege a distinct and palpable injury to himself [or herself], even if it is an injury shared by a large class of other possible litigants."  *Zaycer*, 896 F. Supp. 2d at 408 (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975).  "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."  *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (internal quotations omitted).  Therefore, class representatives who have not suffered an injury in fact cannot predicate standing on injuries suffered by other non-present members of the class.

> **b.**  **The Court Must Strike Knapp's Class Allegations Because She Lacks Standing to Assert Claims on Behalf of Class Members Suing Pursuant to New Jersey Law**

Because Knapp's class allegations are facially deficient, the Court will strike her class allegations.

21

In the Motion to Strike, Zoetis raises a number of arguments concerning the alleged flaws in Knapp's proposed class, including that:  (1) a class action would necessarily involve the application of numerous states' laws; (2) it would require the individual analysis of class members' facts overwhelming common issues; (3) its members are not readily ascertainable; and, (4) that this Court lacks personal jurisdiction over Zoetis regarding class members whose injuries have no connection to Virginia.  (*See* Mem. Supp. Mot. Strike 4, ECF No. 7.)  The Court declines to reach these arguments because Knapp lacks standing to bring a claim based on the facts alleged, on behalf of herself or others, pursuant to New Jersey law.

Knapp, as the sole Named Plaintiff, seeks to advance this class action under New Jersey law.  But, as this Court previously found, Knapp's claims, as currently pled in the Complaint, arise under Virginia law.  Where Knapp lacks standing to bring her claims under New Jersey law, she similarly lacks standing to bring claims on behalf of a class proceeding under New Jersey law.  Knapp cannot show that she has "personally . . . been injured" in a manner similar to the other class members she purports to represent, *Lewis*, 518 U.S. at 357, as the other class members allegedly suffered the invasion of a protected legal interest under the law of New Jersey while she did not.  *See Zaycer*, 896 F. Supp. 2d at 408 (finding that where plaintiff "was neither harmed by the Product, nor purchased the Product, in any state other than [her home state] . . . she has no standing to sue under any state consumer protection law except for [her home state's]")

Although Knapp states that she "believes bringing her class claims under New Jersey law is the best way to achieve an efficient manner of uniform redress," (Mem. Opp. Mot. Strike 2, ECF No. 19), she identifies no authority that allows her to elect to proceed under the laws of a state that do not govern the conduct at issue.  Rather, case law explains that "named plaintiffs

22

lack standing to assert claims [on behalf of a class] under the laws of the states in which they do not reside or in which they suffered no injury." *In re Packaged Ice Antitrust Litig*., 779 F. Supp. 2d at 657 (collecting cases).

Accordingly, the Court will grant the Motion to Strike the class action claims brought pursuant to New Jersey law. The Court will dismiss in their entirety Counts II, III, IV, and V.

### C.   Count VI:  Breach of Express Warranty

The Court determines that Knapp states a claim for breach of express warranty and will deny the Motion to Dismiss as to Count VI.

#### 1.    Legal Standard:  Breach of Express Warranty

The Virginia UCC provides that in certain circumstances a seller of goods creates express warranties, the breach of which may be enforced by the buyer. Va. Code § 8.2-313. For example, when a seller makes "[a]ny affirmation of fact or promise . . . to the buyer which relates to the goods and becomes part of the basis of the bargain," the seller "creates an express warranty that the goods shall conform to the affirmation or promise." Va. Code § 8.2-313(1)(a). "Any description of the goods which is made part of the basis of the bargain [also] creates an express warranty that the goods shall conform to the description." Va. Code § 8.2-313(1)(b).

To state a claim for breach of express warranty in the Commonwealth of Virginia, a plaintiff must plead: (1) the existence of a warranty; and, (2) breach of that warranty. *See McPike v. Zero-Gravity Holdings, Inc*., No. 1:17cv562, 2019 WL 7945710, at *3 (E.D. Va. Mar. 14, 2019) ("courts in this Commonwealth have consistently stated that a breach of warranty claim has only two elements.") "Any description of the goods, other than the seller's mere opinion about the product, constitutes part of the basis of the bargain and is therefore an express warranty." *Martin v. Am. Med. Sys*., 116 F.3d 102, 105 (4th Cir. 1997).

"Virginia law does not require proof of causation to state a breach of warranty claim." *Id*.  In other words, to establish an express warranty claim under either tort or contract, the buyer need not plead actual reliance on the express warranty.  *See Daughtrey v. Ashe*, 413 S.E.2d 336, 338–39 (Va. 1992) (internal citations omitted); *Martin*, 116 F.3d at 105 (explaining that because express warranties form the basis of the bargain, "[i]t is unnecessary that the buyer actually rely upon it").  "An affirmation of fact is presumed to be part of the bargain [between the parties], and any fact that would remove such affirmation out of the agreement 'requires clear affirmative proof.'" *Yates v. Pitman Mfg., Inc*., S.E.2d 605, 606 (Va. 1999) (quoting *Daughtrey*, 413 S.E.2d at 339 (internal quotations omitted)).  Whether an express warranty has been created is a question of fact for the jury.  *Benedict v. Hankook Tire Co*., 295 F. Supp. 3d 632, 637 (E.D. Va. 2018).

### 2.    Knapp Plausibly Pleads That Zoetis Made an Express Affirmation or Promise Regarding Excede that it Subsequently Breached

Knapp plausibly states a claim that Zoetis breached an express warranty to her in its manufacture and sale of Excede.  The Court first concludes that Knapp satisfies the elements of a breach of express warranty claim.  The Court next determines that Knapp need not be in privity of contract with Zoetis to recover on a claim of express warranty.

#### a.    Knapp States Facts Satisfying the Elements of a Breach of Express Warranty Claim

To state a breach of express warrant claim under Virginia law, Knapp must show:  (1) the existence of a warranty; and, (2) breach of that warranty.  *McPike,* 2019 WL 7945710, at *3. Knapp satisfies both elements here.

As to the first element, the existence of a warranty, Knapp plausibly states that Zoetis made an express warranty or affirmation regarding Excede when it stated that "Excede provides

peace of mind knowing that the antibiotic has been demonstrated to be safe and effective in horses" and "Excede makes the treatment process less stressful for you and your horse." (Compl. ¶ 83.)  These statements about the relative safety and treatment advantages of Excede plausibly represent "affirmation[s] of fact or promise[s]," Va. Code § 8.2-313(1)(a), made by Zoetis to the buyer about the "suitability" of the product for its intended purposes.  *See Hamlett v. Va. Vascular Assocs.*, 61 Va. Cir. 468, 470 (Cir. Ct. 2003) (finding plaintiff had stated facts showing an express warranty where medical device company represented to doctors that a stent graft "was suitable . . . to be inserted into [plaintiff's] iliac artery").  Keeping in mind that the question of whether an express warranty has been created is a question of fact for the jury, *Benedict*, 295 F. Supp. 3d at 653, Zoetis facially alleges a "description of the goods, other than [Zoetis's] mere opinion about the product, [that] constitutes part of the basis of the bargain" and established an express warranty under Virginia law.  *Martin*, 116 F.3d at 105.  These facts suffice to satisfy the first element of an express warranty claim under Virginia law.

As to the second element, breach of that express warranty, Knapp plausibly pleads that Zoetis breached its express warranty when it sold goods that did not conform to the above description and caused Boomer to become ill.  Knapp states a claim that Excede did not conform to Zoetis' express representations that the product was "demonstrated to be safe and effective in horses" because the Linmoorland Veterinarian's injection of Excede in Boomer "caused serious harm, [and] stress . . . when used as recommended and directed."  (Compl. ¶¶ 83, 85.)  These facts suffice to satisfy the second element of an express warranty claim under Virginia law.

        **b.**      **Knapp Does Not Need to Show that She Was in Privity of Contract with Zoetis to State a Breach of Express Warranty Claim**

Zoetis contends that Knapp falters at the third element of breach of express warranty:  the requirement that privity between the buyer and the seller of the good exist.  Zoetis argues that "the Va. Code §8.2-715(2)(a) contract requirement prevails over the general privity-release in Va. Code § 8.2-318 . . . . [meaning] a contract between [Knapp] and Zoetis is required for [Knapp] to recover consequential economic damages in her breach of express or implied warranty claims."  (Mem. Supp. Mot. Dismiss 22.)

Virginia Code § 8.2-318 generally eliminates privity as a defense to express warranty claim, providing, in relevant part that:

> [l]ack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer or seller of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant, if the plaintiff was a person whom the manufacturer or seller might reasonably have expected to use, consume, or be affected by the goods.

Va. Code § 8.2-318.  By comparison, Section 8.2-715, entitled "Buyer's incidental and consequential damages," imposes a contract requirement for warranty claims in certain limited circumstances and states as follows:

> (1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.
>
> (2) Consequential damages resulting from the seller's breach include
>
> > (a) any loss resulting from general or particular requirements and needs of which the seller *at the time of contracting* had reason to know and which could not reasonably be prevented by cover or otherwise; and

(b) injury to person or property proximately resulting from any breach of warranty.

Va. Code Ann. § 8.2-715 (emphasis added).

Zoetis cites *Beard Plumbing and Heating, Inc. v. Thompson Plastics, Inc*., 491 S.E.2d 731, 734 (Va. 1997), to support its argument that § 8.2-715 controls here.  (Mem. Supp Mot. Dismiss 21.)  The Court finds *Beard* distinguishable.  In *Beard*, the plumbing fittings used by a subcontractor in a housing development had "cracked and subsequently leaked when hot water was used in the system," requiring the subcontractor "to replace the fittings and to repair the damage to the homes."  491 S.E.2d at 732.  The subcontractor then sued the manufacturers of the faulty product seeking damages, specifically "the uncompensated cost to repair the homes, loss of the remainder of its contract with the general contractor, revenue lost due to damage to business reputation" and various legal and settlement fees.  *Id*.  The Virginia Supreme Court, answering a question certified by the Fourth Circuit, found that because the subcontractor did not have any contract with the manufacturer, the more specific language of § 8.2-715(2)(a), requiring a contract, overrode the general privity release set forth in § 8.2-318.  *Id*. at 733.  However, the *Beard* Court cautioned that it limited its "discussion to subparagraph (a) [of § 8.2-715(2)], since injury to persons or property is not involved in this case."  *Id*.

Here, unlike the plaintiff in *Beard*, Knapp does not claim damages from frustrated economic expectations based on her "general or particular requirements and needs" pursuant to § 8.2-715(2)(a).  Knapp proceeds instead under § 8.2-715(2)(b) and seeks recovery for "injury to . . . *property* proximately resulting from . . . breach of warranty."  Va. Code § 8.2-715(2)(b).[11]

---

[11] For example, had Knapp brought suit alleging solely that Excede failed to reduce the swelling in Boomer's legs, then she would likely need to allege privity of contract with Zoetis under § 8.2-715(2)(a).  But where her claims arise solely out of Excede's alleged damage to her property, she does not need to show privity of contract with Zoetis.

Section 8.2-715(2)(b), which the Virginia Supreme Court explicitly declined to address in *Beard*, *Pulte*, or any other case Zoetis cites, does not require a contract or privity between the buyer and the seller of the product. *See* § 8.2-715(2)(b).

Indeed, federal and state courts in Virginia have held that a plaintiff need not be in privity with a defendant where he or she alleges injury to person or property from breach of express or implied warranty. *See Martin*, 116 F.3d at 105 (finding that Va. Code § 8.2-318's general privity release allowed an injured patient to bring a claim against medical device manufacturer because the surgeon or hospital "is not the ultimate user" of the device); *Porter,* 2019 WL 3979656, at *6 (observing that "Virginia law does not require privity between a reasonably foreseeable user and the manufacturer of an allegedly defective good to sustain a products liability action"); *AIU Ins. Co. v. Omega Flex, Inc*., No. 3:11cv23, 2011 WL 2295270, at *7 (W.D. Va. June 9, 2011) (explaining that privity is not required for a warranty claim brought to recover property damages so "long as there was proximate cause linking the breach of warranty with Plaintiff's property damage."); *Hamlett*, 61 Va. Cir. at 470 ("Because this is a products liability claim, privity is not required, and there is no need to show that the representations were made directly to [the plaintiff]").

Considering this authority, and the plain language of Virginia Code § 8.2-715, Knapp does not need to show that she was in privity of contract to recover consequential economic damages against Zoetis. She satisfies the third and final element of the test because Knapp states the elements of a breach of express warranty claim under Virginia law, the Court will deny Zoetis's Motion to Dismiss as to Count VI.

28

### D.      Counts I and VII:  Negligence and Breach of Implied Warranty

Because Knapp does not identify any defect with Excede, Knapp does not state a claim for negligence or breach of implied warranty against Zoetis under a defective manufacture or defective design theory.[12]  As a result, the Court will grant the Motion to Dismiss as to Counts I and VII pursuant to Rule 12(b)(6).

### 1.      Legal Standard:  Negligence and Breach of Implied Warranty

"The basic analytical framework applicable to products liability claims in Virginia is the same whether a plaintiff is bringing a negligence or breach of implied warranty action." *Benedict*, 295 F. Supp. 3d at 637.  To recover for negligence or breach of implied warranty, a plaintiff must show:  "(1) that the goods were unreasonably dangerous either for the use to which they would ordinarily be put or for some other reasonably foreseeable purpose, and (2) that the unreasonably dangerous condition existed when the goods left the defendant's hands."  *Porter,* 2019 WL 3979656, at *7 (internal citations omitted); *see also Abbot by Abbot*, 844 F.2d at 1114; *Morgen Indus. v. Vaughan*, 471 S.E.2d 489, 492 (Va. 1996); *Ball v. Takeda Pharms. Am., Inc.*, 963 F. Supp. 2d 497, 504–05 (E.D. Va. 2013), *aff'd*, 587 F. App'x 78 (4th Cir. 2014).  "A product is 'unreasonably dangerous' if defective (1) in assembly or manufacture, (2) if imprudently designed, or (3) if not accompanied by adequate warnings about its hazardous properties."  *Abbot by Abbot*, 844 F.2d at 1114.

---

[12] As United States District Judge Robert E. Payne of this Court recently observed, "[t]he basic analytical framework applicable to products liability claims in Virginia is the same whether a plaintiff is bringing a negligence or breach of implied warranty action."  *Benedict*, 295 F. Supp. 3d at 637; *see also Holiday Motor Corp. v. Walters*, 790 S.E.2d 447, 455 (2016) ("the standard of safety of goods imposed on . . . the manufacturer of a product is essentially the same whether the theory of liability is labeled warranty or negligence. The product must be fit for the ordinary purposes for which it is to be used") (internal citation omitted).  Because Knapp's claims for Negligence and Breach of Implied Warranty rise and fall together, the Court will consider them jointly.

"In determining what constitutes an unreasonably dangerous defect, a court will consider safety standards promulgated by the government or the relevant industry, as well as the reasonable expectations of consumers." *Alevromagiros*, 993 F.2d at 420.  Consumer expectations may "be established through evidence of actual industry practices, . . . published literature, and from direct evidence of what reasonable purchasers considered defective." *Id*. at 420–21 (internal citations and quotations omitted).

To state a claim for negligence or breach of implied warranty under a manufacturing defect or design defect theory, the plaintiff must, at a minimum, "allege facts that would permit the Court to conclude that a manufacturing or design defect existed." *Ball*, 963 F. Supp. 2d at 505.  "A bare allegation of a 'defect' is no more than a legal conclusion." *Id*. (collecting cases). Therefore, even at the pleadings stage, a plaintiff must allege sufficient facts "indicating how a product may have been manufactured improperly." *Dodson v. C.R. Bard, Inc*., No. 3:20cv596, 2020 WL 7647631, at *4 (E.D. Va. Dec. 23, 2020); *see also Porter,* 2019 WL 3979656, at *8 (plaintiff must "allege facts specifying a plausible defect in the implants' manufacture or design"); *Fields v. Jobar Int'l, Inc.*, No. 3:14cv50, 2014 WL 1513289, at *5 (E.D. Va. Apr. 16, 2014) ("Without a description of the allegedly dangerous defect, this Court is unable to determine whether Plaintiff has pled an actionable claim for breach of implied warranty that is plausible.")

> ### 2. Knapp Does Not State a Claim for Negligence or Breach of Implied Warranty Because She Does Not Identify Excede's Defect

Knapp does not state a claim under a negligence or breach of implied warranty theory because she does not identify the purported defect with Excede.  Here, Knapp alleges that Excede was unreasonably dangerous under both a (1) manufacturing defect; and, (2) design defect theory.  (*See* Mem. Resp. Mot. Dismiss 8 ("Counts I, III, V, and VII state claims upon

which relief may be granted for *defective design* and *manufacture* under both New Jersey and Virginia law.") (emphasis added).[13]

Knapp cannot state a claim under either theory because she does not identify any specific defect with Excede.  As courts within the Eastern District of Virginia have ruled, to state a claim for negligence or breach of implied warranty in a products liability action under a design defect or manufacturing defect theory, the plaintiff must, at a minimum, "allege facts that would permit the Court to conclude that a manufacturing or design defect existed."  *Ball*, 963 F. Supp. 2d at 505; *Dodson,* 2020 WL 7647631, at *4; *Porter,* 2019 WL 3979656, at *6; *Fields,* 2014 WL 1513289, at *5.  Knapp offers no facts showing that "there was a defect, what the defect was, or how the defect occurred."  *Wilder v. Toyota Motor Sales, U.S.A*., Inc., 23 F. App'x 155, 157 (4th Cir. 2001).  Instead, Knapp recites the elements of a negligence and implied breach of warranty claim under Virginia law without factual enhancement.  Without such facts, the Court "is unable to determine whether Plaintiff has pled an actionable claim for breach of implied warranty."  *Fields*, 2014 WL 1513289 at *5.

---

[13] Although Knapp brought a failure to warn claim in Count II under New Jersey law, she declined to press a failure-to-warn claim in Count VII.  (*See* Zoetis Reply Mot. Dismiss 2 (recognizing that Knapp "does not allege a failure to warn claim under Virginia law, and despite the implications of the choice of law rules, makes no attempt to argue that she has stated such a claim.").  To the extent Knapp asserts a failure to warn claim, that too must falter on the present Complaint.  To state a failure to warn claim, a party must prove that the manufacturer: "(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use *for which it is supplied*, and (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and (c) fails to exercise reasonable care to inform them of its dangerous condition."  *Featherall v. Firestone Tire & Rubber Co*., 252 S.E.2d 358, 366 (1979) (quoting Restatement (Second) of Torts §388 (1965)) (emphasis added).  Here, Knapp acknowledges that her use of Excede, to reduce swelling in Boomer's legs, did not conform to the brand use of "treating equine respiratory infections."  (Compl. ¶ 34.)  Without a plausible allegation that Zoetis *also* knowingly supplied Excede for its off-brand use of treating swelling, Knapp cannot plausibly show that Zoetis had reason to know Excede was "likely to be dangerous for the use for which it [was] supplied" insofar as Knapp's use of the drug to treat leg swelling.  *Featherall*, 252 S.E.2d at 366.

Knapp cannot state a negligence or breach of implied warranty claim based only on the fact that a negative event occurred after she utilized Excede.  In *Ball*, a plaintiff similarly alleged that "she suffered infertility and contracted Stevens-Johnson syndrome" after taking a drug. *Ball*, 963 F. Supp. 2d at 499.  Despite the fact that the plaintiff suffered an injury after using the product, the *Ball* Court determined that the mere fact that an injury had occurred did not provide "any facts that would permit the Court to conclude that a manufacturing or design defect existed, or that such a defect was the proximate cause of plaintiff's alleged injuries."  *Id*. at 505.  Here too, the fact that Boomer became ill following the Linmoorland Veterinarian's administration of Excede does not necessarily lead to the conclusion that a defect existed.

In response, Knapp, relying solely on a case from the Western District of Virginia, *James v. Subaru Corporation*, argues that "[t]he Federal Rules of Civil Procedure simply do not require that level of detail or a forecasting of the plaintiff's anticipated evidence" in a negligence or implied breach of warranty claim.  No. 1:19cv30, 2019 WL 6468563, at *2 (W.D. Va. Dec. 2, 2019).  In that case, the plaintiff sued a car manufacturer for injuries resulting from the unexpected deployment of an airbag.  *Id*.  The *James* Court denied the manufacturers motion to dismiss, stating that the plaintiff "adequately pled that were the airbag not defective, or were she warned of its defect, she would not have been injured by its unexpected and forceful deployment . . . [and] [a]t this early stage of the proceedings, no more is necessary."  *Id*. at *3.

In *James* however, unlike here, the manufacturers challenged whether plaintiff pled sufficient facts "showing what consumers expect of side curtain airbags" and "proximate cause." *Id*. at *2.  Here, Zoetis challenges whether Knapp has properly identified the defect in Excede. Furthermore, to the extent that *James* suggests that a plaintiff need not identify a specific defect in a products liability case, that suggestion unfortunately runs counter to the weight of authority

in the Eastern District of Virginia which has consistently followed the rule that "[a] bare allegation of a 'defect' is no more than a legal conclusion." *Ball*, 963 F. Supp. 2d at 505; *see also Fields*, 2014 WL 1513289, at \*5 (rejecting plaintiff's argument that "she is not required to identify the [product's] defects at the pleading stage to support her implied warranty claim.").

Because Knapp has not stated facts identifying any defect within Excede, she does not meet the first element of a negligence or breach of implied warranty claim. The Court will therefore grant Zoetis's Motion to Dismiss as to Counts I and VII without prejudice.

### IV.  Conclusion

For the foregoing reasons, the Court will grant in part and deny in part Zoetis's Motion to Dismiss, (ECF No. 4), and will grant Zoetis's Motion to Strike, (ECF No. 6).

An appropriate order shall issue.

/s/

M. Hannah Lauck
United States District Judge

Date: 3/31/21
Richmond, Virginia